FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
JUL 11 2002
DAVID J. MALAND, CLERK
BY
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MARVIN LEE WILSON, | § | |
| Petitioner | § | |
| vs. | § | No. 6:01cv186 |
| | § | Judge Leonard Davis |
| JANIE COCKRELL, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Institutional Division, | | |
| Respondent | § | |

## MEMORANDUM OPINION

This is a capital murder death penalty case before the Court on petition for writ of *habeas corpus* filed by Marvin Lee Wilson ("Petitioner") pursuant to 28 U.S.C. § 2254. Petitioner was convicted of capital murder and sentenced to death in the 252nd Judicial District Court of Jefferson County, Texas in cause number 63490, styled *The State of Texas v. Marvin Lee Wilson*. Petitioner raises six claims for relief alleging various constitutional violations. Respondent, Janie Cockrell, Director of the Texas Department of Criminal Justice, Institutional Division, has answered and moved for summary judgment. For the reasons stated below, the Court denies Petitioner's petition for writ of *habeas corpus*, and grants Respondent's Motion for Summary Judgment.



## Application Of The Antiterrorism And Effective Death Penalty Act

This case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") because Petitioner's petition for federal *habeas corpus* relief was filed on October 18, 2001, after the AEDPA effective date of April 24, 1996. The AEDPA provides, in pertinent part

> (d) An application for writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d). This provision applies because all of Petitioner's claims were adjudicated on the merits by the Texas Court of Criminal Appeals.

## Factual Background

The following facts are taken from the Texas Court of Criminal Appeals' opinion on Petitioner's direct appeal.

> On November 4, 1992, Officer Robert Roberts and other police officers entered [Petitioner's] apartment pursuant to a search warrant. Jerry Williams was the confidential informant whose information enabled Roberts to obtain the warrant. . . . Over 24 grams of cocaine were found [in the apartment], and [Petitioner] . . . [was] arrested for possession of a controlled substance. . . . Sometime after the incident, [Petitioner] told Terry Lewis that someone had "snitched" on [Petitioner], that the "snitch" was never going to have the chance to [sic] "to have someone else busted," and that [Petitioner] "was going to get him."
> On November 9, 1992, several observers saw an incident take place in the parking lot in front of Mike's Grocery. Vanessa Zeno and Denise Ware were together in the parking lot. Caroline Robinson and her daughter Coretta Robinson were inside the store. Julius Lavergne was outside the store, but came in at some point to relay information to Caroline. The doors to Mike's Grocery were made of clear glass, and Coretta stood by the door and watched. Zeno, Ware, Coretta, and Lavergne watched the events unfold while Caroline called the police. These witnesses testified consistently although some witnesses noticed details not noticed by others.
> In the parking lot, [Petitioner] stood over Williams and beat him. [Petitioner] asked Williams, "What do you want to be a snitch for? Do you know what we do to a snitch? Do you want to die right here?" In response, Williams begged for his life. Andrew Lewis,

2

Terry's husband, was pumping gasoline in his car at the time. Williams ran away from [Petitioner] and across the street to a field.

[Petitioner] pursued Williams and caught him. Andrew drove the car to the field. While Williams struggled against them, [Petitioner] and Andrew forced Williams into the car. At some point during this incident, either in front of Mike's Grocery, across the street, or at both places, Andrew participated in hitting Williams and [Petitioner] asked Andrew: "Where's the gun?" [Petitioner] told Andrew to get the gun and said that he [Petitioner] wanted to kill Williams. They drove toward a Mobil refinery. Zeno and Ware drove back to their apartments, which were close by, and when they arrived, they heard what sounded like gunshots from the direction of the Mobil plant.

Sometime after the incident, [Petitioner] told his wife, in the presence of Terry Lewis and her husband, "Baby, you remember the nigger I told you I was going to get? I did it. I don't know if he dead or what, but I left him there to die." When Terry looked back at her husband, [Petitioner] stated, "Don't be mad at Andrew because Andrew did not do it. I did it."

On November 10, 1992, a bus driver noticed William's dead body on the side of the road. The autopsy report concluded that Williams died from close range gunshot wounds to the head and neck

*Wilson v. State*, 7 S.W.3d 136, 139-40 (Tex.Crim.App. 1999).

## **Procedural Background**

On December 18, 1992, Petitioner was indicted for capital murder. The indictment charged Petitioner with murdering Jerry Williams during the course of a kidnapping. On April 27, 1994, a jury found Petitioner guilty of capital murder and answered the special issues in such a way that the trial court sentenced Petitioner to death. On direct appeal, the Texas Court of Criminal Appeals reversed and remanded the case for a new trial in light of the prosecutor's improper jury argument. Petitioner's retrial began on January 26, 1998. On February 26, 1998, the jury returned its verdict finding Petitioner guilty of capital murder. On February 28, the jury once again answered the special issues in such a manner that the trial court sentenced Petitioner to death. On December 8, 1999, the Texas Court of Criminal Appeals affirmed Petitioner's conviction and sentence on direct appeal. Petitioner did not file a writ of *certiorari* to the United States Supreme Court. On December 27, 1999, Petitioner filed his state application for post-conviction relief. The trial court

3

recommended that relief be denied, and the Texas Court of Criminal Appeals adopted the trial court's recommendation, denying relief on October 11, 2000. Petitioner filed this federal writ of *habeas corpus* on October 18, 2001.

## **Parole Instruction**

In his first claim, Petitioner argues that his Eighth and Fourteenth Amendment rights were violated by the trial court's failure to inform the jury that Petitioner would not be eligible for parole until he served thirty-five years in prison. On direct appeal, the Texas Court of Criminal Appeals rejected Petitioner's claim stating that it "held consistently that the United States and Texas constitutions do not require that a jury in a capital case be given such information." *Wilson*, 7 S.W.3d at 148. The issue for this Court is whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. *See* 28 U.S.C. § 2254 (d)(1).

In *Simmons v. South Carolina*, 512 U.S. 154, 169 (1994), the Supreme Court held that due process requires a trial court to instruct the jury in a prosecution for capital murder that the defendant would be statutorily ineligible for release on parole if the jury imposed a life sentence. Justice O'Connor, in a concurring opinion, limited the applicability of the case to its facts by concluding that there would be no constitutional requirement to so inform the jury if a defendant were eligible for parole at some point in time. *Id.* at 176. The Fifth Circuit, in *Allridge v. Scott*, 41 F.3d 213, 222 (5th Cir. 1994), *cert. denied*, 514 U.S. 1108 (1995), interpreted *Simmons* to mean that "due process requires the state to inform a sentencing jury about a defendant's parole ineligibility when, and only when, (1) the state argues that a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole."

4

Petitioner urges the Court to consider the similarity between the facts of this case and *Simmons*. However, in *Ramdass v. Angelone*, 530 U.S. 156, 169 (2000), the Supreme Court specifically stated that "*Simmons* applies only to instances where, as a legal matter, there is no possibility of parole if the jury decides the appropriate sentence is life in prison." In the instant case, Petitioner would have been eligible for release on parole had he received a life sentence. Accordingly, the trial court's refusal to give a parole eligibility instruction did not violate Petitioner's constitutional rights. The Texas Court of Criminal Appeals' decision was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court in *Simmons* and *Ramdass*. *See* 28 U.S.C. § 2254 (d)(1). Respondent's Motion for Summary Judgment will be granted as to Petitioner's first claim.

## Statutory Definition Of Kidnapping

In his second claim, Petitioner argues that his conviction was based on an unconstitutionally vague and overbroad statutory definition of "kidnapping" in violation of the Eighth and Fourteenth Amendments. Kidnapping is a statutory aggravating factor that elevates Petitioner's crime above the offense of ordinary murder and narrows the class of crimes to which the death penalty may attach. *See* Tex. Penal Code § 19.03. In *Jurek v. Texas*, 428 U.S. 262, 267 (1976), the Supreme Court concluded that "Texas' capital-sentencing procedures, . . . , do not violate the Eighth and Fourteenth Amendments" in part because "[b]y narrowing its definition of capital murder, Texas has essentially said that there must be at least one statutory aggravating circumstance in a first-degree murder case before a death sentence may even be considered." The state *habeas* court found that Petitioner

failed to show the existence of any facts which would materially distinguish the facts showing the "kidnapping" in his case from the facts showing the "kidnapping" in *Jurek v. State*, 522 S.W.2d 934 (Tex.Crim.App. 1975), the case in which the Supreme Court on *certiorari* held that the present Texas capital murder scheme passed constitutional muster.

*Ex parte Wilson*, No. 46,928-01 (Tex.Crim.App. 1999). The issue for this Court is whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. *See* 28 U.S.C. § 2254 (d)(1).

Under the Texas Penal Code § 20.03, "[a] person commits the offense of kidnapping if he intentionally or knowingly abducts another person." The definition section provides the following definitions

> Abduct means to restrain a person with intent to prevent his liberation by
> (A) Secreting or holding him in a place where he is not likely to be found; or
> (B) Using or threatening to use deadly force.
>     \*       \*       \*
> Restrain means to restrict a person's movements without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him. Restraint is "without consent" if it is accomplished by: force, intimidation, or deception.

Petitioner claims that this statutory definition of kidnapping is overbroad. Specifically, Petitioner argues that the offense of kidnapping "only requires the intentional knowing restraint of a person with the intent to prevent her liberation by secreting her in a place where she is not likely to be found or using or attempting to use deadly force." Petitioner asserts that this definition does not limit the class of murders subject to the death penalty because a murderer who moves his victim even the slightest distance has committed the act of kidnapping. *See Zant v. Stephens*, 462 U.S. 862, 877 (1983) (holding that a state's capital sentencing scheme must narrow the class of persons eligible for the death penalty).

The Supreme Court has stated that

> a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.

*Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). Accordingly, Petitioner does not have standing to raise the issue of whether every act of confinement or movement falling under the definition of kidnapping and accompanying a murder gives rise to a capital offense. Rather, the relevant inquiry in this case is whether Petitioner's detention of Williams constitutes kidnapping or, as Petitioner argues, was merely incident to the murder.

In *Jurek*, the defendant accosted the victim in a public place, drove her to a river, choked her, and threw her body into the river. In the instant case, Petitioner engaged the victim in the parking lot of a grocery store, forced him into a car, took him to a field, and shot him. Petitioner does not demonstrate how the facts of his case differ from those of *Jurek*. Furthermore, the evidence demonstrates that the victim attempted to run from Petitioner, but that Petitioner caught him and then forced him into the car. These facts establish that Petitioner's detention of Williams constituted kidnapping. Accordingly, under *Broadrick*, Petitioner's attack on the constitutionality of § 20.03 is barred. Because the facts establish that Petitioner did commit kidnapping in the course of murdering Williams, the state court's decision upholding his conviction for capital murder was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court in *Jurek* and *Zant*. *See* 28 U.S.C. § 2254 (d)(1). Respondent's Motion for Summary Judgment will be granted as to Petitioner's second claim.

## *Batson* Challenge

In his third claim, Petitioner contends that his rights under the Sixth Amendment and the Equal Protection Clause of the Fourteenth Amendment were violated by the prosecution striking jurors based on race in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). The defense objected at trial and the trial court heard the prosecution's reasons for striking the jurors at issue. Petitioner offered no evidence of pretext in response to the prosecution's race neutral reasons for striking the jurors, and the trial court found all the strikes were justified.[1] The issue for this Court is whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254 (d)(2).

Petitioner claims that the prosecution "engaged in disparate treatment of persons with the same or similar characteristics." He argues that the prosecution's strikes, whether "considered independently, in combination, or collectively, . . . [were] merely shams." Petitioner baldly states that "the record on *voir dire* is void of any testimony which would indicate that these jurors were challenged on the basis of anything but race."

---

[1] This claim was not raised on direct appeal, but was raised in Petitioner's state application for post-conviction relief. The state *habeas* court held that
> [Petitioner] has failed to prove that the State acted with discriminatory intent in exercising peremptory strikes against the subject African Americans; and therefore again finds, as it did at trial, that the prosecutor's explanations were indeed "race neutral". [sic]

In its Motion for Summary Judgment, Respondent incorrectly states that "the presiding judge during both the trial and *habeas* proceedings was the Honorable Leonard Giblin." The presiding judge during the state application for post-conviction relief was Judge Charles Carver. As such, the state *habeas* findings and conclusions are not entitled to deference under the AEDPA. *See Amos v. Scott*, 61 F.3d 333, 347 (5th Cir.), *cert. denied*, 516 U.S. 1005 (1995) (fact finding procedure which involves credibility determinations and is based on a paper hearing affords the *habeas* petitioner a full and fair hearing when the state court judge who presided over the petitioner's trial conducts the *habeas* proceeding).

"A trial judge's finding of bias during voir dire is a determination of fact, subject to a presumption of correctness on collateral review." *Fuller v. Johnson*, 114 F.3d 491, 500-01 (5th Cir.), *cert. denied*, 522 U.S. 963 (1997). This Court is required by 28 U.S.C. § 2254 (d)(2) to presume the state court findings correct unless the Court determines that the findings result in a decision which is unreasonable in light of the evidence presented. Additionally, the unreasonableness, if any, must be established by clear and convincing evidence. *See* 28 U.S.C. § 2254 (e)(1). Petitioner has addressed the peremptory challenge of three of the seven *Batson* jurors by merely paraphrasing what jurors accepted by the prosecution said and arguing that it is nearly identical to what the struck jurors said. The state *habeas* court found that

> writ counsel's paraphrasing of the prosecutor's stated reasons and of the "comparison examples" from the voir dire of the seven subject black panelists who were struck by the prosecutor against the voir dire of the various panelists who were not struck by the prosecutor does not reflect the **full** content and thrust of their relevant voir dire testimony or of their demeanor in giving it.

(emphasis in original). Petitioner has not made a showing that the state court's finding is unreasonable. Taking into consideration the deference afforded the trial court, the lack of any argument by the defense at trial showing that the strikes were improper, and the failure of Petitioner to establish the unreasonableness of the state court's finding, Respondent's Motion for Summary Judgment will be granted as to Petitioner's third claim.

## Search And Seizure

In his fourth claim, Petitioner contends that his Fourth Amendment Due Process rights were violated by the introduction of evidence seized under invalid search warrants. A claim of Fourth Amendment error based on an allegedly unconstitutional search and seizure is not cognizable on federal *habeas corpus* review when the state has provided a petitioner with an opportunity for full

and fair litigation of his claim. *Stone v. Powell*, 428 U.S. 265 (1976). In the present case, the defense filed a Motion to Suppress the evidence and the trial court held a pre-trial hearing on the motion. At the conclusion of the testimony, the trial court made written findings of fact and conclusions of law finding "beyond a reasonable doubt, that said warrants were issued based on probable cause and are valid on their face." Because Petitioner was provided with a full and fair opportunity to litigate this issue pre-trial, Respondent's Motion for Summary Judgment will be granted as to Petitioner's fourth claim.

## Ineffective Assistance Of Trial Counsel

In his fifth claim, Petitioner contends that he was denied his Sixth Amendment right to counsel. Specifically, Petitioner claims that trial counsel was ineffective in four instances: (1) failing to obtain probable cause affidavits; (2) failing to request a charge on the lesser included offense of murder; (3) pressuring a material witness to change his testimony; and (4) conducting an in-court comparison of the physical attributes of Petitioner to those of a witness in an effort to demonstrate similarities between the two.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court laid down the two-part test for resolving ineffective assistance of counsel claims. Under that test, Petitioner must show that (1) counsel's performance was deficient, and (2) that that deficiency prejudiced the defense such that the result of the trial would have been different. *Id.* at 687. Failure to meet either of the two *Strickland* prongs is fatal to Petitioner's claim. *Id.* at 700. Petitioner bears the burden of proving both prongs by a preponderance of the evidence. *See Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1992), *cert. denied*, 508 U.S. 978 (1993).

Petitioner raised this claim in his state application for post-conviction relief. The state *habeas* court found that Petitioner

> entirely failed to meet the burden placed upon him under *Strickland v. Washington*, at 466 U.S. 693, which requires him to plead and prove specific acts or failures of trial counsel that show their performance was deficient and plead and prove that any such alleged item of deficient performance was so serious as to deprive [Petitioner] of a fair trial whose result is reliable.

The issue for this Court is whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. *See* 28 U.S.C. § 2254 (d)(1).

Petitioner has not shown that the state court's conclusion was unreasonable. As to his allegation that counsel was ineffective in not obtaining the probable cause affidavits, Petitioner has not established that, had the probable cause affidavits been obtained and offered, there is a reasonable probability that the outcome of the trial would have been different. The record cites Petitioner offers do not contain the information he claims, and even if they did, there is no explanation of the relevance of such testimony. As to his allegation regarding his counsel's failure to request a charge on the lesser included offense of murder, Petitioner does not state what evidence before the jury could lead them to conclude that he was guilty of murder rather than capital murder. Texas law requires that before a charge on a lesser included offense be given, there must be some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense. *Rousseau v. Texas*, 855 S.W.2d 666, 672 (Tex.Crim.App.), *cert. denied*, 510 U.S. 919 (1993). In reaching a determination on Petitioner's second claim, this Court already found that the evidence supports the jury's verdict finding Petitioner guilty of capital murder. Petitioner completely fails to offer any information in support of his allegation that counsel was ineffective in improperly pressuring a material witness to change his story. Petitioner has not demonstrated that,

had counsel not tried to pressure the witness to change his story, there is a reasonable probability that the result of his trial would have been different.[2] Finally, along the same lines, Petitioner fails to show how counsel's comparison of the physical attributes of Petitioner with a witness who was in jail at the time of the capital murder prejudiced the defense such that there is a reasonable probability that, had counsel not made the comparison, the result of the trial would have been different. This Court finds that the state court's decision was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court under *Strickland*. *See* 28 U.S.C. § 2254 (d)(1). Respondent's Motion for Summary Judgment will be granted as to Petitioner's fifth claim.

### Ineffective Assistance Of Appellate Counsel

In his sixth and final claim, Petitioner contends that he was denied his Sixth Amendment right to effective assistance of appellate counsel. Specifically, Petitioner complains that his appellate counsel failed to adequately brief issues "regarding the constitutionality of parole instructions coupled with the Capital Sentencing scheme, the unconstitutionality of the Texas Capital Murder statute, illegally seized evidence, improper use of peremptory challenges by the state, and trial counsels' performance at guilt/innocence as well as punishment." Petitioner raised this claim in his state application for post-conviction relief. The state *habeas* court found that Petitioner

> fail[ed] to allege[] any facts or cite any authorities which would prove and support his entirely conclusory allegations of alleged deficiency in appellate counsel's performance.

---

[2] Defense counsel's alleged efforts to alter the witness' testimony were unsuccessful.

The issue for this Court is whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. *See* 28 U.S.C. § 2254 (d)(1).

*Strickland* applies to claims of ineffective assistance of appellate counsel. As he did with his fifth claim, Petitioner completely fails to make any showing of deficient performance or prejudice. In essence, the entirety of Petitioner's argument concerning this claim is quoted above. Accordingly, this Court finds that the state court's decision was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court under *Strickland*. *See* 28 U.S.C. § 2254 (d)(1). Respondent's Motion for Summary Judgment will be granted as to Petitioner's sixth claim.

## Conclusion

The Court finds that there are no material issues of fact and that Respondent is entitled to judgment as a matter of law on each of the claims raised in Petitioner's petition. Respondent's Motion for Summary Judgment will be GRANTED. Petitioner's petition for writ of *habeas corpus* will be DENIED. An order and judgment to this effect will be entered separately.

SIGNED this 11th day of July, 2002.

LEONARD DAVIS
UNITED STATES DISTRICT JUDGE